UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHENWEI LU,<br><br>                                    Petitioner,<br><br>v.<br><br>PATRICK DIVVER; KRISTI NOEM;<br>DEPARTMENT OF HOMELAND<br>SECURITY; PAMELA BONDI;<br>EXECUTIVE OFFICE OF<br>IMMIGRATION REVIEW: and<br>WARDEN OF OTAY MESA<br>DETENTION CENTER,<br><br>                                    Respondents. | Case No.: 26-cv-781-JES-DEB<br><br>**ORDER GRANTING MOTION TO ENFORCE JUDGMENT**<br><br>**[ECF No. 8]** |

Before the Court is Petitioner Zhenwei Lu's motion to enforce this Court's February 13, 2026, order requiring Respondents to provide Petitioner with a constitutionally adequate bond hearing. ECF No. 5. Pursuant to the Court's order, Respondents filed a response in opposition to the motion and Petitioner filed a reply. ECF Nos. 10, 11. The Court ordered supplemental briefing, which Respondents filed on May 22, 2026. ECF No. 13. For the reasons set forth below, the Court **GRANTS** the motion.

//

//

## I.    BACKGROUND

Petitioner is a native of China who has been detained at the Otay Mesa Detention Center since February 4, 2025. ECF No. 1. In his original habeas petition, Petitioner argued that he should not be considered mandatorily detained under 8 U.S.C. § 1225(b) but rather his detention is governed by § 1226. *Id.* After briefing by the parties, the Court granted the petition and ordered Respondents to provide Petitioner with a "constitutionally adequate and individualized bond hearing." ECF No. 5 at 2.

On February 24, 2026, Respondents filed a Notice of Compliance, indicating that a timely bond hearing was held where Petitioner was denied bond. ECF No. 7. The filing included the one page order of the Immigration Judge ("IJ"), stating that bond was denied because of "danger." ECF No. 7-1.

Subsequently, on March 5, 2026, Petitioner filed a motion to enforce the judgment. ECF No. 8. The Court set a briefing schedule. ECF No. 9. Pursuant to this order, Respondents filed an opposition to the motion to enforce, and Petitioner filed a reply. ECF Nos. 10, 11. The parties also lodged a copy of the hearing audio with the Court. The Court then further ordered the parties to provide supplemental documents (ECF No. 12), which the parties did on May 22, 2026. ECF No. 13.

The bond hearing itself lasted about 3:16 minutes. Petitioner appeared by video and was represented by counsel. The IJ stated that the burden would be on Petitioner to show that he is not a danger or flight risk, and that he had the motion for bond along with 23 pages of submitted evidence. Counsel for Petitioner raised that he believed the burden should be on the government, but went onto argue that a bond should be granted in the amount of $1500 because Petitioner has no criminal record, is not a flight risk, has always checked in with ICE as required, has a fixed address if released, and has a credible sponsor. The IJ then stated the following as his reason for denying bond:

> "I have the government's form I-213. It establishes that the Respondent attempted to enter a U.S. military base. Based on that alone, I find that he is a danger to the community. When a foreign national tries to enter a military base, we don't know his true reasons. It could be simply a missed turn, or it

26-cv-781-JES-DEB

could be for something more nefarious. So bond is denied. Respondent is a danger to the community."

After stating this on the record, the IJ did not give the parties any further opportunity for response or argument, and only asked them if they reserved their rights, before concluding the hearing.

The supplemental briefing included the Form I-213 that was discussed at the hearing. The relevant portion regarding the entrance to the military base recites as follows:

> Immigration and Customs Enforcement (ICE), San Diego Criminal Apprehension Program (CAP), assigned to Camp Pendleton, conducted an at-large field arrest of LU, Zhenwei born December 31, 1976, a citizen and national of CHINA.
>
> On February 02, 2026 , at approximately 5:30 p.m. CAP/ERO Officers DO H. PRIETO and DO P. MORENO, assigned to Camp Pendleton, was contacted by Military Police Officer LCPL. NELSON Badge Number 4685 and advised that he had a foreign-born individual in custody. DO PRIETO and DO MORENO responded to The Main Gate access to Camp Pendleton.

ECF No. 13 at 8. The form goes on to recount the identification that Petitioner was able to provide to the officers and how records showed that he was a citizen of China and did not possess documents permitting him to be in the United States. *Id.* The form also states that Petitioner "makes no claim to service in the U.S. military" and that he "stated he attempted to enter Camp Pendleton by making the wrong turn as he was heading home." *Id.* at 9. Petitioner was then advised that "he was under arrest for an immigration violation, 'EWI-Asylum seeker Out of Status.'" *Id.* He was then taken into immigration detention custody. *Id.*

## II.   LEGAL STANDARD

District courts have the authority to review compliance with prior orders granting habeas relief, including orders for bond hearings. *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011). The party challenging compliance with the bond order bears the burden of proof, and ambiguities are resolved in favor of the non-moving party. *C.A.R.V.*

26-cv-781-JES-DEB

*v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823, at \*3 (E.D. Cal. Jan. 29, 2026).

"When questions require a close review of agency-found facts," like an administrative judge's finding of dangerousness or flight risk in a bond hearing, "we review for an abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024); *see also Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at \*5 (E.D. Cal. Mar. 13, 2026) (applying abuse of discretion standard to review compliance with an order for bond hearing on habeas); *Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at \*8 (E.D. Cal. Oct. 22, 2025) (same); *C.A.R.V.*, 2026 WL 241823 at \*6 (same). The Court's review for abuses of discretion is limited to those which allege "violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions." *See Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (quoting *Strickland v. Morton*, 519 F.2d 467, 471 (9th Cir. 1975)).

Thus, the government's discretion in immigration bond hearings remains constrained by the requirements of constitutional due process limits. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). A noncitizen may show that an IJ abused her discretion in violation of the due process clause in a bond hearing by demonstrating either that the IJ "simply did not apply the right standard to the facts" or that "the IJ erred because the evidence itself could not—as a matter of law—have supported the decision to deny bond." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 126 (D.R.I. Dec. 3, 2025) (internal quotations omitted); *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.").

//

//

//

26-cv-781-JES-DEB

## III.   DISCUSSION

### A.   Administrative Exhaustion

Respondents argue that Petitioner is required to exhaust administrative remedies regarding his bond determination before the Board of Immigration Appeals ("BIA") prior to bringing a motion to enforce judgment in this Court. ECF No. 10 at 2-5. Petitioner argues that exhaustion is not required in the context of a motion to enforce, and, further, that exhaustion would be futile here. ECF No. 11 at 2-3. For the reasons set forth below, the Court agrees.

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). "If exhaustion is statutory, it may be a mandatory requirement that is jurisdictional." *Id.* (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 747 (9th Cir.1991)). "If, however, exhaustion is a prudential requirement, a court has discretion to waive the requirement." *Id.* (citing *Stratman v. Watt,* 656 F.2d 1321, 1325–26 (9th Cir.1981)).

In the context of petitions for writ of habeas corpus for immigration detainees under 2241, "exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011). "[C]ourts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotations and citations omitted). Even where prudential exhaustion may be required, however, it still may be waived or excused for "a number" of reasons, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation and citation omitted). In addition, in cases of motions to enforce bond orders, "any alleged exhaustion requirement

[] must fully contend with the Court's continuing authority to enforce its own injunction." *C.A.R.V.*, 2026 WL 241823, at *4.

The Court acknowledges that courts within this District have reached opposing conclusions on this issue. Some courts have held that exhaustion with the BIA is required before a bond order may be reviewed by the habeas court. *See Baker v. Gordon*, Case No. 25-cv-03539-CAB-SBC, ECF No. 8 at 2 (S.D. Cal. Jan. 30, 2026); *Rana v. LaRose*, No. 26-cv-00285-RSH-DDL, ECF No. 11 (S.D. Cal. Mar. 13, 2026). However, others, including the undersigned, have excused administrative exhaustion for the limited purpose of ensuring compliance with a previous order where petitioner shows that an excuse applies or the applicability of an exception is apparent on the face of the motion. *Bayani v. LaRose,* Case No. 26-cv-2660-JES-VET, ECF No. 19 at 5-8 (S.D. Cal. May 5, 2026); *Perez Velasquez v. Bondi*, Case No. 26-cv-1759-GPC-DDL, ECF No. 11 at 5-9 (S.D. Cal. Apr. 16, 2026). This holding comports with many district courts in other jurisdictions as well. *See, e.g., Izaguirre v. Freden*, No. 6:25-CV-6672-EAW, 2025 WL 3551788, at *1 (W.D.N.Y. Dec. 11, 2025) (holding that exhaustion was not required because, "[a]mong other reasons, exhaustion would be futile under these circumstances."); *Loba L.M.*, 2026 WL 710307, at *5 (excusing exhaustion despite the petitioner not making "an explicit showing" of an excuse in the motion to enforce, because the court had previously found ongoing irreparable harm in its previous order); *Morgan v. Oddo*, No. 3:24-CV-221, 2025 WL 2653707, at *3–4 (W.D. Pa. Sept. 16, 2025) (noting the difficulty in applying the exhaustion requirement to motions to enforce and excusing prudential exhaustion); *see also Mau v. Chertoff*, 562 F. Supp. 2d 1107 (S.D. Cal. 2008) (holding that exhaustion was not required for the limited scope of review of a motion to enforce); *Judulang v. Chertoff*, 562 F. Supp. 2d 1119 (S.D. Cal. 2008) (same); *Sales v. Johnson*, 2017 WL 6855827 (N.D. Cal. Sept. 20, 2017) (same).

Here, Petitioner argues that the administrative exhaustion requirement should not apply in this case and that, if it does, his failure to exhaust administrative remedies should be excused under the futility exception, the importance of his due process liberty interest

6

26-cv-781-JES-DEB

at stake. ECF No. 11 at 3. Other district courts have excused prudential exhaustion under nearly identical facts and arguments. *See Izaguirre*, 2025 WL 3551788, at \*1; *Loba L.M.*, 2026 WL 710307 at \*5; *Morgan v. Oddo*, 2025 WL 2653707, at \*3–4.

Respondents argue that Petitioner should be required to exhaust administrative remedies before seeking relief here because (1) agency expertise is required; (2) waiving exhaustion would encourage other detainees to bypass the BIA; and (3) civil detention is not an irreparable injury. ECF No. 10 at 4-5. These are identical arguments made and to which the Court rejected in *Bayani*. *Bayani,* Case No. 26-cv-2660-JES-VET, ECF No. 19 at 8 (S.D. Cal. May 5, 2026). The Court does not repeat its analysis here, but adopts it in full.

After careful consideration of the factors raised by Petitioner and the arguments of the parties, the Court does not find occasion to depart from its ruling in *Bayani* and again joins the many other courts that have excused prudential exhaustion in this case for purposes of reviewing compliance with the Court's prior order for a bond hearing. *See Izaguirre*, 2025 WL 3551788, at \*1; *Loba L.M.*, 2026 WL 710307, at \*5; *Morgan v. Oddo*, 2025 WL 2653707, at \*3–4.

### B.    Sufficiency of the Bond Hearing

Petitioner first argues that the IJ applied the wrong standard at the bond hearing, by placing the burden on him to establish that he was a not a flight risk or danger. ECF No. 8 at 5. On this issue, the Court disagrees with Petitioner. Here, the bond hearing was ordered under 8 U.S.C. § 1226(a). ECF No. 5 at 2. Under § 1226(a), the "detainee [must] demonstrate[] by the preponderance of the evidence" that he is not a danger or flight risk. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022). Despite Petitioner's attempt to limit this burden stated in *Rodriguez Diaz* to the situation where the noncitizen has already had one bond hearing and applies to a second bond hearing (*see* ECF No. 8 at 5), the court has previously rejected similar arguments. *See, e.g.*, *Sandesh v. LaRose*, No. 26-CV-0846-JES-DDL, 2026 WL 622690, at \*5 (S.D. Cal. Mar. 5, 2026) ("*Rodriguez Diaz* held that the noncitizen bears the burden of proof in hearings under 1226(a)"); *Perez*

*Velasquez v. Bondi*, No. 26-CV-01759-GPC-DDL, 2026 WL 1042479, at *5 (S.D. Cal. Apr. 16, 2026) ("At Petitioner's 1226(a) hearing, he bore the burden of showing by a preponderance of the evidence that he was not a danger to the community or a flight risk."); *dos Santos v. Becerra*, No. 26-CV-01423-GPC-VET, 2026 WL 800201, at *1 (S.D. Cal. Mar. 23, 2026) (rejecting the petitioner's argument that burden should be on government in his § 1226(a) bond hearing and holding that "Petitioner bears the burden of demonstrating by a preponderance of the evidence that he is not a flight risk or danger to national security"); *Mediana v. Divver*, No. 26-CV-01760-GPC-MSB, 2026 WL 821596, at *1 (S.D. Cal. Mar. 25, 2026) (§ 1226(a) bond hearing requires "Petitioner demonstrate by a preponderance of the evidence that he is not a flight risk or danger to the community"); *cf. Abbasov v. Casey*, No. 26-CV-1867-BJC-DDL, 2026 WL 1021376, at *1 (S.D. Cal. Apr. 15, 2026).

Next, Petitioner argues that the bond hearing was not constitutionally adequate, as required by this Court's bond hearing order, because it relied on a singular piece of evidence to find that Petitioner was a danger to the community—that Petitioner drove onto a military base. ECF No. 8 at 4-5.

"To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024). In *Matter of Guerra*, the BIA listed a non-exhaustive set of nine factors as follows:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

26-cv-781-JES-DEB

24 I&N Dec. 37, 40 (BIA 2006). The BIA also held that IJs may consider any evidence in the record when assessing bond eligibility, so long as the evidence is "probative and specific." *Id.*

Here, the sole basis of the bond hearing result was the entry to the military base. It does not appear that Petitioner has been criminally charged for this conduct, but the *Guerra* factor that is most analogous may be factor six, which looks to the non-citizen's criminal record. In *Matter of Guerra* itself, the BIA upheld an IJ's finding that a non-citizen was bond ineligible based on a criminal complaint without a conviction. *Id.* at 41 ("In the context of custody redeterminations, Immigration Judges are not limited to considering only criminal convictions in assessing whether an alien is a danger to the community."). In that case, the BIA emphasized the indicia of reliability in the criminal complaint, and the scope and seriousness of the criminal conduct alleged, which made it reasonable for the IJ to give the complaint significant weight in determining dangerousness. *Id.* Specifically, the court there emphasized that the complaint had been signed by a DEA agent and the description of the drug trafficking scheme the non-citizen was accused of was "specific and detailed." *Id.* ("It describes the source of the information that the respondent was involved in the sale of drugs. It sets forth the events leading to the respondent's arrest, including locations, alleged accomplices, and other details.").

Since *Matter of Guerra*, several federal courts have used the "probative and specific" evidence requirement to determine whether IJ's bond determinations comport with due process constraints. *See Garcia*, 817 F. Supp. 3d at 127-28 (collecting cases). In *Garcia*, the evidence of prior criminal activity relied upon was a ten-year old Guatemalan warrant for "suppression of marital status" and "ideological falsehood." *Id.* at 122. The IJ stated on the record she did not know what the charge was for, and counsel for the government stated the same. *Id.* at 122-23. Regardless, the IJ found that the existence of the warrant met the preponderance of the evidence standard for a flight risk. *Id.* at 123. The district held that the evidence the IJ relied upon was not "probative and specific" based on the hearing transcript, finding that "the evidence against [the non-citizen] could not have—as a matter

26-cv-781-JES-DEB

of law—supported the IJ's decision to deny bond if she did not even know what that evidence was or how it was relevant (if at all) to the question of flight risk." *Id.* at 128.

Similarly, in *Ortega-Rangel v. Sessions*, a district court found that the mere "fact of [petitioner's] arrest [was] not 'probative and specific' and therefore the IJ's sole reliance on her arrest to detain her violated due process." 313 F. Supp. 3d 993, 1005 (N.D. Cal. 2018). There, the IJ relied upon a recent arrest of the non-citizen for possession for sale of a controlled substance. *Id.* at 999 ("The dangers that selling controlled substances cause a community, and society in general, cannot be easily overstated. The Board has long recognized the dangers associated with the sale and distribution of drugs."). The district court held that the reliance violated due process. First, the evidence was only for an arrest, and there was not sufficient evidence in the record to show that she actually did sell drugs. *Id.* at 1004 ("While Ms. Ortega had been arrested for selling drugs, no court or grand jury had determined that there is probable cause to believe she in fact had done so."). The non-citizen there did not admit to selling drugs and evidence only supported that she may have been aware of her boyfriend selling drug. *Id.* at 1004-05.

In contrast, courts have affirmed the IJ's reliance on past criminal activity post *Guerra* on evidence that is probative and specific. In *Alsharif v. Donelan*, the non-citizen had an arrest for robbery committed with a knife. No. CV 20-30030-PBS, 2020 WL 3232476, at *2 (D. Mass. May 14, 2020). Evidence presented at the bond hearing included a police report that included details on the robbery and the evidence, including finding the knife and stolen money on the non-citizen. *Id.* The district court found this evidence sufficient to support the IJ's finding of danger. *Id.* at *4 ("The immigration judge who ordered Petitioner detained had before him reliable evidence that Petitioner participated in robbing a man at knifepoint in the middle of the night and that he did so in association with other individuals.").

Here, the IJ relied upon Petitioner's entry into the Camp Pendleton base without authorization. Petitioner does not appear to have been charged with a crime related to this conduct. The only evidence in front of the IJ at the bond hearing was the Form I-213, which

stated that Petitioner was being held at the Main Gate to Camp Pendleton and was a foreign-born individual. ECF No. 13 at 8. The report did not contain any further details about how Petitioner entered Camp Pendleton, other than Petitioner's statement that stated "he attempted to enter Camp Pendleton by making the wrong turn as he was heading home." *Id.* at 9. At the hearing itself, the IJ acknowledged that he did not know the true reason that Petitioner entered the base: "It could be simply a missed turn, or it could be for something more nefarious." The IJ did not take further evidence or testimony on this issue.

Evaluating this evidence in light of the cases as summarized above, the Court finds that the evidence relied upon here falls short of the "probative and specific standard." While conduct does not need to be criminally charged in order for an IJ to rely on it, the evidence relied upon still must contain details and specificity to support the finding of danger or flight risk. Here, even the IJ acknowledged that Petitioner's entry into the base may have been an honest mistake, which would not support a finding of danger to the community. *See Garcia*, 817 F. Supp. 3d at 128 ("[T]he evidence against [the non-citizen] could not have—as a matter of law—supported the IJ's decision to deny bond if she did not even know what that evidence was or how it was relevant (if at all) to the question of flight risk.").

Accordingly, the Court finds that the IJ abused his discretion by relying upon evidence to find danger where such evidence was not probative or specific. Because this abuse of discretion constitutes a deprivation of Petitioner's right to due process at the bond hearing, the Court **GRANTS** the motion to enforce judgment.

## IV.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's motion to enforce judgment and **ORDERS** the Government to provide the non-citizen with a second bond determination hearing, adhering to all Constitutional requirements as interpreted by this Circuit and this Court, within **fourteen days** of this Order, unless the non-citizen requests a continuance. **The Government** is **ORDERED** to File a Notice of Compliance within

**five days** of providing the non-citizen with the bond hearing, including apprising the Court of the results of the hearing.

      **IT IS SO ORDERED.**

Dated: June 2, 2026

_____

Honorable James E. Simmons Jr.
United States District Judge

26-cv-781-JES-DEB